# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47477-8-II |
| Respondent, | |
| v. | |
| DARREL LORNE HARRIS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Darrel Lorne Harris appeals his conviction for first degree rape of a child, first degree child molestation, and indecent liberties.  Harris argues that (1) the prosecutor committed misconduct by (a) appealing to the passions and prejudices of the jury, (b) misrepresenting the law, and (c) expressing personal opinions on facts not in evidence; (2) defense counsel provided ineffective assistance by not objecting to the prosecutor's comments; (3) the trial court erred by excluding his home surveillance footage and investigator's testimony; (4) the trial court violated his right to be present and the presumption of innocence by ordering him to refrain from emoting; and (5) the cumulative effect of the errors requires reversal.  Harris also argues in a statement of additional grounds for review (SAG) that (6) defense counsel was deficient for failing to enter his surveillance footage as evidence; (7) the prosecutor improperly examined him on photographs not in evidence; (8) the trial court erred by denying all of his requests and granting all of the prosecution's; and (9) the trial court erred by excluding his surveillance footage.  We affirm.

FACTS

A. THE INCIDENT

In November 2013, Harris lived with his niece, K.M.,[1] and K.M.'s daughter, J.J.,[2] at Harris's home. At the time, Harris was 47 years old, K.M. was 25 years old, and J.J. was 5 years old.

On November 6, K.M. awoke to Harris touching her vagina. K.M. moved his hand away. Harris told her that he wanted a relationship with her, but she refused and left the room. Through the rest of the day, Harris drove K.M. to a doctor's appointment, the two had lunch together, and Harris went to work. K.M. hugged Harris before he left for work. But by the time Harris returned home after work, K.M. and J.J. had moved to the home of Theresa Midgette, K.M.'s aunt.

On November 9, K.M. called the police to report the sexual assault. Officer Alex Richards responded and spoke to her. K.M. told Officer Richards about Harris touching her. K.M. said that she did not report it earlier because Harris had threatened to kill her in the past. K.M. also said that Harris had abused J.J. J.J. told Officer Richards that Harris touched her in a "private spot" and that he put "a finger in there." 3 Verbatim Report of Proceedings (VRP) at 279-80.

The next day, K.M. took J.J. to the emergency room to be examined by Dr. Leah Roberts. Dr. Roberts did not find any physical evidence of abuse. However, J.J. did describe what Harris had done to her to Dr. Roberts, forensic interviewer Keri Arnold, pediatric practitioner Michelle Breland, K.M., and Theresa Midgette.

_____

[1] To protect the child's privacy, this opinion uses the mother's initials.

[2] Pursuant to General Order 2011-1, we use initials for child witnesses in sex crime cases.

On January 24, 2014, the State charged Harris with one count of indecent liberties for touching K.M. The State also charged Harris with one count of first degree rape of a child and one count of first degree child molestation for abusing J.J.

B.    PRETRIAL MOTIONS

Before trial, defense counsel sought to admit Harris's home surveillance footage. The footage contained video clips, including one of the hug between K.M. and Harris before he left for work on November 6, 2013. Harris argued that the footage should be admitted to challenge K.M.'s credibility and show that her actions were inconsistent with someone who had been sexually assaulted earlier that day. The trial court found that the footage was not relevant because it lacked audio and was subject to interpretation, and denied the motion. But the trial court ruled that the witnesses could be examined about the events depicted in the footage.

C.    TRIAL

1.    Emoting During the State's Case in Chief

Throughout the first half of trial, Harris emoted by nodding and agreeing during witness testimony. The trial court considered these acts as attempts to influence the jury and ordered both parties, but Harris in particular, to refrain from emoting. This was done outside the presence of the jury and defense counsel agreed to discuss this with Harris. However, Harris continued emoting by shaking his head, laughing, and smirking during K.M.'s testimony. As a result, the trial court, outside the presence of the jury, issued a warning and threatened a mistrial if Harris's emoting continued.

2.      State's Evidence

The prosecutor examined Dr. Roberts and Breland about the lack of physical evidence. Dr. Roberts testified that "[i]t is not unusual to see no visual evidence of trauma" in child sexual abuse cases and that "there often is not blatant physical evidence because they are often, the vaginal tissues as well as the rectal tissues . . . are elastic and they don't often tear or visibly bruise." 3 VRP at 296-97. This opinion was confirmed by Breland during her testimony, when she testified that "[m]ost of the time when kids have been sexually abused, their bodies are fine" and that "research supports that when kids have been sexually abused, it's normal for them to not have any physical signs on examination." 5 VRP at 596, 599.

3.      Defense's Evidence

In the defense's case in chief, defense counsel renewed its motion to admit Harris's home surveillance footage. The trial court denied the motion citing relevance and authentication concerns. It reasoned that because K.M. did not contradict the footage, it was no longer relevant to impeachment; the defense would still be able to argue their case.

Defense counsel also sought to introduce testimony from an investigator about the layout of Harris's home. The layout of the house, the existence of doors to Harris's and J.J.'s rooms, and the ability to close the doors were at issue in the case. Harris was scheduled to testify about the layout of his home. The trial court found that because Harris would be testifying about the layout of the home, the investigator's testimony would not provide anything Harris could not. The trial court excluded the testimony because it was cumulative, but ruled that the investigator would be allowed to testify about the home if Harris did not do so.

During the direct examination of Harris, the trial court admitted four photographs into evidence. These photographs depicted different views inside Harris's home: (1) one of his living room and bedroom doorway; (2) one of his doorway in relation to the living room; (3) one from K.M.'s bedroom into J.J.'s; and (4) one from J.J.'s bedroom into K.M.'s. The State then cross-examined Harris about these photographs and others that were taken but not admitted. Two of the photographs not admitted showed J.J.'s bed in relation to the door and the living room as viewed from inside Harris's room.

4.      Closing and Rebuttal Arguments

The prosecutor argued during closing that:

> Those are [J.J.'s] words. That is her telling adults that are there to help her, what happened to her. Her words. That is enough. Nothing more is required. You will not find anywhere in your instructions that something more is required. That, in addition to a child saying it happened to them, you need corroborating evidence. The law doesn't require it. Her words are enough. They are sufficient evidence for you to convict.

> It was talked about in voir dire about this being the situation. It came up that some people might require more, might not just think it would be nice to have more, but actually would require more. As a juror on this case, all of you as jurors on this case, you have taken an oath to follow that law in your instructions. That law does not require more. You took an oath to follow that law.

> . . . .

> You have all of those things that you would like to see, but commonly don't see. According to our law, Washington law, it doesn't matter that these things don't exist, in fact rarely exist. So can you imagine a system wherein the majority of cases that are like this one, a child or victim would have to be told, sorry, we can't go forward, we can't prosecute your case because there is nothing to corroborate what you are saying. No one is going to believe a kid with nothing beside your word to prove it. You know, the law requires more. But we don't have that system. Our system doesn't require more.

> Testimony, a child's words, a victim's words, are all you need.

5

If you believe [J.J.], what she told Ms. Arnold in the forensic interview, which you watched in open court, it was admitted. You'll be able to watch it again if you wish, what she told you from the stand, again what she was able to say, in front of you, a group of strangers, and her abuser, what she told Dr. Roberts, Michelle Breland, her [mother] and auntie, then you are satisfied beyond a reasonable doubt, you have an abiding belief in the truth of the charges. That is being convinced beyond a reasonable doubt.

VRP (Feb. 24, 2015) at 52-54. Harris did not object to the State's closing arguments.

Defense counsel provided a hypothetical during closing arguments and focused on the credibility of K.M. and J.J. and the lack of corroborating evidence.

Now, one of the issues I brought up at the beginning of the trial in voir dire is the subject matter of this type of an allegation. The overwhelming prejudice that society has when this kind of an allegation is made. That prejudice is there really whether or not that allegation is corroborated or uncorroborated. I would submit to you that you read about it in the newspaper or you hear about it, and there is that prejudice that just automatically attaches to that kind of an allegation. In no other situation, I don't think under any other circumstance, would somebody's statement without corroboration be proof positive.

I talked about this analogy in voir dire. You have the contract case where somebody is owed money. There is absolutely no proof. Now, could there be proof? There might be. Could be contracts, work done, something like that. What I am saying is, if there is no proof, there is no proof of work done, no contract, there are no eyewitnesses, somebody says I am owed the money, if that's all the evidence there was, nobody would rule in that person's favor. Yet that is exactly what you are being asked to do in this case. The burden of proof and the presumption of innocence does not change just based on the type of issue we have, whether it is a mundane issue or a very heinous issue. The burden of proof is the same regardless. In fact, I will submit to you that one would even be more careful in the more serious matters. In the instructions, it does say the seriousness of the case can make you more careful or you're allowed to be more careful because of the seriousness of the allegation.

Now, let's take a look at the evidence in this case. Or maybe the lack of evidence in this case. What do we have? We have statements. That is it. There is nothing else. When we have statements and nothing else, it is critical, it is absolutely critical to look at the individual making those statements. You are going

6

to have, in society, a far range of people that make accusations. In this case, the accusations flow or come from one person. That is [K.M.].

. . . .

Now, let's look at what we don't have in this case. The prosecutor has touched on this. We don't have anything. Essentially we have nothing. There is nothing establishing that abuse occurred. There is nothing verifying abuse occurred. There is nothing corroborating the statements from [K.M.]. There is no medical evidence. Again, I would submit to you there are cases where there is medical evidence. We have no medical evidence showing any abnormality whatsoever, rashes, bruising, anything. In fact, there were two examinations. They both showed that [J.J.] was a healthy, young five-year-old. There was no signs of her having been raped. No physical evidence. No eyewitness evidence. No admissions or confessions. Nothing.

The prosecutor called a number of witnesses, other than [K.M.] and [J.J.]. In fact, they called a total of six other witnesses other than [K.M.] and [J.J.]. Not one of those witnesses presented any additional evidence of [K.M.] or [J.J.] being abused.

. . . .

There is no evidence in this case. It is a very serious matter. Proof beyond a reasonable doubt is mandatory. [Harris] is not guilty of these allegations. He told you he did not commit these horrible acts. The prosecutor did not prove their case beyond a reasonable doubt. They presented absolutely no evidence of sexual contact outside of the highly dubious testimony of [K.M.]. I am imploring you to return a verdict of not guilty on all three counts in this matter.

VRP (Feb. 24, 2015) at 76-77, 86-88.

In rebuttal, the prosecutor argued:

Again, we don't require—the law does not require corroboration of when a person says, I was raped. The law doesn't require that. We don't want it to. Because then you could prosecute maybe one percent of the crimes. Everyone else, even though they are coming forward and they are saying, this happened to me, we would have to tell them: Too bad. Your words are not enough. Your sworn testimony is not enough.

We don't live in that world. That is not what is required. Testimony is enough. That is evidence.

7

. . . .

Couple of things there. It is not just someone's statement. People come in and they testify. They swear to tell the truth. It isn't just a statement. It is testimony. Again, that is proof. There are cases. Defense counsel says in no other situations, in no other case would this be enough. That's not true. If someone says something happened to them, anything, an assault, theft, they don't have some sort of independent corroborating evidence, it doesn't matter. They are saying it happened. If you believe that person, then you are convinced beyond a reasonable doubt.

. . . .

What I am telling you is that there almost never is other proof. This is not unusual. Yet, these cases are prosecutable. You can find someone guilty beyond a reasonable doubt because someone is telling you this happened to me. That is what you have here.

. . . .

[J.J.] told Ms. Arnold what happened to her. Her, in the most detail, because that's Ms. Arnold's job. [J.J.] could not say much here. Don't hold that against her. She's six. This happened to her. The defendant is the one that did it. It came up, it came about, who knows, [J.J.] may have never told.

The defendant also touched [K.M.]. As a mother, she had to ask [J.J.], "Did something also happen to you?" That is when it came out. Don't let the defendant get away with this because it is like so many others where there is no corroborating evidence. It doesn't matter. He did it. Find him guilty.

VRP (Feb. 24, 2015) at 91-92, 97-98. Harris did not object to the State's rebuttal arguments.

5.       Verdict

The jury found Harris guilty on all counts charged. Harris appeals.

ANALYSIS

Harris argues that the prosecutor committed misconduct during closing and rebuttal arguments, and alternatively, that defense counsel provided ineffective assistance by not objecting

to such misconduct; the trial court erred in excluding his surveillance footage and his investigator's testimony; and the trial court violated Harris's constitutional rights by restraining him from emoting. We disagree.

A.    PROSECUTORIAL MISCONDUCT

Harris claims that the prosecutor committed misconduct during the State's closing and rebuttal arguments by (1) appealing to the passions and prejudices of the jury; (2) misrepresenting the law; and (3) expressing personal opinions. We agree that the prosecutor committed misconduct by appealing to the passions and prejudices of the jury and expressing personal opinions on facts not in evidence, but the prosecutor did not misrepresent the law and any misconduct was not prejudicial.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We must first determine whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, the question turns to whether the misconduct resulted in prejudice. *Id.* at 760. Prejudice is established by showing a substantial likelihood that such misconduct affected the verdict. *Id.*

Where a defendant does not object at trial, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice. *Id.* at 760-61. Under this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury

9

verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In making this determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. To analyze prejudice, we look at the comments in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). The jury is presumed to follow the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

2.      Appealing to the Passions and Prejudices of the Jury

Harris first argues that the prosecutor committed misconduct by appealing to the passions and prejudices of the jury. We agree but hold that such misconduct was not prejudicial.

a.      Misconduct

Prosecutors commit misconduct when they use arguments designed to arouse the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Such arguments create a danger that the jury may convict for reasons other than the evidence. *See State v. Ramos*, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011). "A proper argument stays within the bounds of the evidence and the instructions" given. *State v. Smiley*, 195 Wn. App. 185, 194, 379 P.3d 149 (2016).

In *State v. Thierry*, the prosecutor stated that "if the jury did not believe [the victim's] testimony, and . . . acquitted [the defendant], 'then the State may as well just give up prosecuting these cases, and the law might as well say that [t]he word of a child is not enough.'" 190 Wn. App. 680, 691, 360 P.3d 940 (2015) (some alterations in original), *review denied*, 185 Wn.2d 1015 (2016). Defense counsel objected to the statement, but the trial court overruled and allowed the

prosecutor to proceed; the prosecutor repeated this theme throughout closing and rebuttal arguments. *Id.* at 688, 692. This court concluded that the prosecutor's message improperly appealed to the emotions of the jury by relying on the "threatened impact on other cases, or society in general, rather than on the merits of the State's case." *Id.* at 691. In reaching its conclusion, this court reasoned that the prosecutor's statements meant that the jury needed to convict in order to allow reliance on the testimony of future child sexual abuse victims and to protect future victims of such abuse. *Id.*

Similarly, in *State v. Smiley*, the prosecutor made several statements calling the jurors to imagine a legal system in which corroborating evidence was required and to consider how difficult it would be to hold abusers responsible. 195 Wn. App. at 191. The prosecutor in *Smiley* argued:

> That is enough for proof beyond a reasonable doubt. Nothing more is required. . . . There's nothing that says there needs to be corroborating evidence of any kind, some kind of physical evidence, some kind of eyewitness. . . . The law does not require it.

> Can you imagine a system where it was required? . . . It's not unusual for kids not to disclose to anyone where it's going to come to the attention of the system until months, sometimes years later. . . .

> . . . .

> If the system did work that way, kids would have to be told, we're sorry, we can't prosecute your case, we can't hold your abuser responsible because all we have is your word, and that's not enough. No one's going to believe a kid or a teen, and we need something else. We don't do that. That's not how the system works.

> If the law required that additional evidence, we couldn't prosecute so many of these cases, the majority of these cases. We couldn't hold the majority of sexual abusers responsible. We couldn't hold [the victim's] abuser responsible. So the law doesn't require it. All you need is someone telling you it happened, and if you believe that person, if you believe [the girl], that's enough, you are satisfied beyond a reasonable doubt of the defendant's guilt.

*Id*. The court found that the prosecutor's statements were improper and prejudice resulted. *Id.* at 194-95. The court reasoned that it was "unnecessary to explain why the law is the way it is," and that "[s]uch explanations tend to lead into policy-based arguments that divert the jury from its fact-finding function." *Id*. at 194. However, unlike in *Thierry*, defense counsel in *Smiley* did not object. *Id*. at 195. The court held that if an objection had been made, the trial court could have sustained the objection and instructed the jury to disregard the prosecutor's statements. *Id*. at 196-97. As a result, the court held that because the prejudice was curable, the defendant had waived the issue of the improper argument by failing to object. *Id*. at 197.

The present case is analogous to *Smiley* as the arguments made by the prosecutor here are similar to those made by the prosecutor in *Smiley*. First, just as in *Smiley*, the prosecutor here called the jury to imagine a system in which corroborating evidence was required and how difficult it would be to prosecute cases with a child's testimony alone. The prosecutor here argued:

> So can you imagine a system wherein the majority of cases that are like this one, a child or victim would have to be told, sorry, we can't go forward, we can't prosecute your case because there is nothing to corroborate what you are saying[?] . . . But we don't have that system. Our system doesn't require more.
>
> Testimony, a child's words, a victim's words, are all you need.

VRP (Feb. 24, 2015) at 53-54.

The prosecutor then argued that if corroborating evidence was required, the State could only prosecute one percent of such cases because words would not be enough.

> Again, we don't require—the law does not require corroboration of when a person says, I was raped. The law doesn't require that. We don't want it to. Because then you could prosecute maybe one percent of the crimes. Everyone else, even though they are coming forward and they are saying, this happened to me, we would have to tell them: Too bad. Your words are not enough. Your sworn testimony is not enough.

> We don't live in that world. That is not what is required. Testimony is enough. That is evidence. . . .
>
> It is not just someone's statement. People come in and they testify. They swear to tell the truth. It isn't just a statement. It is testimony. Again, that is proof. . . . If someone says something happened to them, anything, an assault, theft, they don't have some sort of independent corroborating evidence, it doesn't matter. They are saying it happened. If you believe that person, then you are convinced beyond a reasonable doubt.

VRP (Feb. 24, 2015) at 91-92.

Like *Smiley*, the prosecutor's arguments theorized the inability to prosecute child sexual abuse cases if the legal system required corroborating evidence; such an alternative description of the way the law worked essentially asked the jurors to "align themselves with 'the system' in deciding what the necessary quantum of proof should be from a public policy perspective" and if they did not, then other children would be in danger. 195 Wn. App. at 194-95. The prosecutor's comments were improper because it created the risk that the jury decided to believe J.J.'s testimony for improper reasons. Therefore, we hold that the prosecutor committed misconduct.

b. Prejudice

With a finding of misconduct, the analysis turns to whether Harris was prejudiced. Because Harris did not object, the inquiry is whether a curative instruction would have obviated any prejudicial effect. *Emery*, 174 Wn.2d at 761. Division One has held that such arguments constitute misconduct but can be cured with a proper instruction. *Smiley*, 195 Wn. App. at 197 ("[T]he court could have decisively derailed the argument by sustaining the objection and instructing the jury to disregard the improper comments."). We follow *Smiley* and hold that because an instruction could have cured any resulting prejudice, Harris's failure to object waives this argument on appeal.

3.      Misrepresenting the Law and the Jury's Function

Harris next argues that the prosecutor committed misconduct by misrepresenting the law and the jury's function. We hold that the prosecutor did not misrepresent the law and the jury's function.

A prosecutor commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Such misstatements have "grave potential to mislead the jury." *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). But a prosecutor's statements must be considered in context. *State v. Swanson*, 181 Wn. App. 953, 964, 327 P.3d 67 (holding that a prosecutor's conduct is reviewed in the full context, considering the issues, arguments, evidence, and instructions presented and given to the jury), *review denied*, 181 Wn.2d 1024 (2014).

Harris challenges the prosecutor's argument that "the jurors would be violating their oath if they decided that the child's word alone was insufficient to meet the State's burden." Br. of Appellant at 26. Harris's challenge fails because one theme of the prosecutor's closing and rebuttal arguments was that corroborating evidence is not required. In fact, the prosecutor's preceding and following statements further explained that corroborating evidence is not required and that the State is able to meet its burden of proof and satisfy the beyond a reasonable doubt standard without corroborating evidence.

Harris argues that the prosecutor "implored [the jury] to ignore the evidence" when she stated, "Don't let the defendant get away with this because it is like so many others where there is no corroborating evidence. It doesn't matter. He did it. Find him guilty." Br. of Appellant at 26; VRP (Feb. 24, 2015) at 98. However, considering this statement in the context of the prosecutor's entire argument, it is apparent that "it doesn't matter" refers to the provision in RCW 9A.44.020(1),

14

which does not preclude a finding of guilt in the absence of corroborating evidence. This statement correctly argued that corroborating evidence was not required to find Harris guilty beyond a reasonable doubt. Thus, we hold that the prosecutor did not misrepresent the law and the jury's function.[3]

4.      Introducing Outside Evidence and Personal Opinion

Harris argues that the prosecutor committed misconduct by introducing outside evidence and expressing personal opinion. We agree but hold that such misconduct was not prejudicial.

a.      Misconduct

Courts are concerned about the expression of personal opinions by prosecutors because juries may give special weight to their arguments due to their fact-finding resources. *Glasmann*, 175 Wn.2d at 706. Therefore, it is improper for a prosecutor to express a personal opinion independent of the evidence because juries may believe that prosecutors have insider information that was not shared during trial. *State v. Susan*, 152 Wash. 365, 380, 278 P. 149 (1929). However, if based on the evidence, prosecutors may make reasonable inferences in their arguments. *State v. Dhaliwal*, 150 Wn.2d 559, 579, 79 P.3d 432 (2003). Also, prosecutors are allowed to respond to the arguments made by the defense. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). On review, a prosecutor's statements are considered in context. *Swanson*, 181 Wn. App. at 964.

---

[3] We also note that the trial court instructed the jury: (1) they must "decide the facts in [the] case based upon the evidence presented [to them] during [the] trial," (2) the "lawyers' statements are not evidence. The evidence is the testimony and the exhibits," and (3) that they "are also the sole judges of the value or weight to be given to the testimony of each witness." Clerk's Papers at 85-86. The jury is presumed to have followed such instructions. *Anderson*, 153 Wn. App. at 428.

Here, the prosecutor's arguments went beyond a reasonable inference based on the evidence. At trial, Dr. Roberts testified that "[i]t is not unusual to see no visual evidence of trauma" in child sexual abuse cases and that "there often is not blatant physical evidence because they are often, the vaginal tissues as well as the rectal tissues . . . are elastic and they don't often tear or visibly bruise." 3 VRP at 296-97. Breland testified that "[m]ost of the time when kids have been sexually abused, their bodies are fine" and that "research supports that when kids have been sexually abused, it's normal for them to not have any physical signs on examination." 5 VRP at 596, 599. From this evidence, during closing arguments, Harris argued that there is no corroborating evidence or medical evidence to show that abuse occurred. In response, the prosecutor argued that "the law does not require corroboration of when a person says, I was raped. The law doesn't require that. We don't want it to. Because then you could prosecute maybe one percent of the crimes" and "[w]hat I am telling you is that there almost never is other proof. This is not unusual. Yet, these cases are prosecutable." VRP (Feb. 24, 2015) at 91, 97. The prosecutor then punctuated her argument by telling the jury to not "let the defendant get away with this because it is like so many others where there is no corroborating evidence. It doesn't matter. He did it. Find him guilty." VRP (Feb. 24, 2015) at 98.

The State argues that these arguments were in response to Harris's argument about the lack of evidence and that they were reasonable inferences based on the testimony provided by Dr. Roberts and Breland. However, the prosecutor's arguments that "then you could prosecute maybe one percent of the crimes," "there almost never is other proof. This is not unusual," and "it is like so many others where there is no corroborating evidence," went beyond what is acceptable as a reasonable inference. By expanding the argument beyond the testimony of Dr. Roberts and

Breland, and speaking about the ability to prosecute similar crimes, the existence of proof, and what is usual or unusual, the prosecutor improperly interjected her own experiences and personal opinions on facts not in evidence. Therefore, we hold that the prosecutor's comments were improper.

####        b.       Prejudice

Finding the prosecutor's comments were improper, the analysis turns to whether Harris was prejudiced. Because Harris did not object, the inquiry is whether a curative instruction would have obviated any prejudicial effect from the improper comments. *Emery*, 174 Wn.2d at 761.

Here, any resulting prejudice could have been cured by a proper instruction from the trial court to disregard the improper comments.[4] Accordingly, we hold that Harris's prosecutorial misconduct claims fail.

####     5.       Cumulative Effect of Prosecutorial Misconduct

Harris argues that the cumulative effect of prosecutorial misconduct requires reversal. We disagree.

Under the cumulative error doctrine, a trial court's verdict will be reversed when it appears reasonably probable that the cumulative effect of errors materially affected the outcome, even when no one error alone mandates reversal. *Russell*, 125 Wn.2d at 93. The defendant bears the burden of proving the cumulative effect of the errors is of a sufficient magnitude that retrial is necessary. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835 (1994).

---

[4] Again, we note that the trial court instructed the jury that they must decide the facts of the case based on the evidence presented and that the lawyers' statements are not evidence. The jury is presumed to follow the trial court's instructions. *Anderson*, 153 Wn. App. at 428.

Here, Harris has identified two instances of prosecutorial misconduct. As discussed above, the prosecutor committed misconduct by appealing to the passions and prejudices of the jury and expressing her personal opinion on facts not in evidence; however, such misconduct was not prejudicial. Defense counsel utilized the prosecutor's comments in closing, countered them by presenting his own hypothetical about what happens when there is a lack of corroborating evidence in other situations, and highlighted the effect of uncorroborated allegations in prejudicial circumstances. Harris has not met his burden of proving the cumulative effect of the two errors materially affected the outcome. Therefore, his argument fails.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Harris also claims that he was prejudiced by ineffective assistance of counsel. In support, he cites defense counsel's failure to object to the prosecutor's improper comments made during closing and rebuttal arguments. We disagree.

1.     Legal Principles

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, Harris must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If Harris fails to establish either prong of the test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). There is a strong presumption of effective assistance, and the defendant bears the burden rebutting that presumption by showing the lack of a legitimate strategic or tactical reason for the challenged

18

conduct. *McFarland*, 127 Wn.2d at 336; *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013) ("[C]ounsel's performance is not deficient if it can be characterized as a legitimate trial tactic.").

Decisions of whether to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). We presume that a failure to object is a part of a legitimate trial strategy. *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). Where a defendant bases his ineffective assistance of counsel claim on counsel's failure to object, the defendant must rebut this presumption by showing that the objection would likely have succeeded and the result of the proceeding would have been different. *Id.* "The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." *State v. Edvalds*, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Johnston*, 143 Wn. App. at 19 (quoting *Madison*, 53 Wn. App. at 763).

2.    Deficient Performance

Harris argues that defense counsel's failure to object to the prosecutor's improper statements, discussed in Section A above, constituted deficient performance. We disagree.

In this case, the record shows that defense counsel's failure to object to the prosecutor's arguments was reasonable and a part of a legitimate trial strategy. The focus of defense counsel's closing argument, and entire defense theory, was that the State presented only allegations without any corroborating evidence. In fact, defense counsel posited his own hypothetical to counter the State's arguments and provided the example of a contracts case—if someone alleged they were

owed money, but there was no proof, then "nobody would rule in that person's favor." VRP (Feb. 24, 2015) at 76-77. This defense originated in voir dire and continued throughout the trial, during which, defense counsel also attacked K.M.'s and J.J.'s credibility, raised questions about their motivations for making such allegations, stressed that the State failed to present any evidence to support the allegations other than K.M.'s and J.J.'s testimony, and highlighted the lack of any corroborating evidence. Utilizing the prosecutor's arguments to emphasize a counter argument is a basic and legitimate trial strategy. Because Harris is not able to show the lack of a legitimate strategic or tactical reason for defense counsel's decision to not object, he is unable to overcome the presumption of effective assistance. Therefore, Harris's ineffective assistance of counsel claim fails.

C.      RIGHT TO PRESENT A MEANINGFUL DEFENSE

Harris argues that the trial court violated his right to present a meaningful defense when it excluded (1) his home surveillance footage and (2) his investigator's testimony. We disagree.

1.      Standard of Review

A defendant's Sixth Amendment right to present a meaningful defense is denied when the defendant is precluded from presenting evidence on highly probative facts. *State v. Jones*, 168 Wn.2d 713, 720-21, 230 P.3d 576 (2010). Such a situation exists when the defendant is not able to testify or otherwise present evidence of facts that are essential to the ultimate issue and equate to the defense's entire argument. *See id.* at 721.

A dispute as to whether a piece of evidence should have been admitted is reviewed under different standards of review based on the reason for its admission and the effect of its exclusion. *See id.* at 719-720. When the evidence is nonessential to the defense's case, the appellate court

reviews for an abuse of discretion because the dispute does not implicate a constitutional right. *See id*. at 721; *State v. Ashley*, 186 Wn.2d 32, 39, 375 P.3d 673 (2016).

Here, Harris sought to introduce his home surveillance footage. The surveillance footage depicted the hug between Harris and K.M. before Harris left for work on November 6, 2013. Harris argues that the footage would have helped impeach K.M.—that she did not exhibit the typical behavior of a person that had been sexually assaulted earlier that day. However, the footage was not essential because the case did not hinge on the hug. Without the footage, defense counsel was still able to examine Harris and K.M. on the events depicted, neither of whom denied what happened. Thus, the footage was not so probative as to deny Harris a defense by its exclusion.

Harris also sought to introduce his investigator's testimony about the layout of Harris's home because the existence of doors for Harris's and J.J.'s rooms, and their ability to close were at issue in the case. But the investigator's testimony was not essential because defense counsel had already planned to question Harris about the layout of his home and present pictures of the home. Also, the trial court ruled that if Harris did not testify, then the investigator's testimony would be allowed. Harris testified about the very matters his investigator was proffered to testify about. Thus, the investigator's testimony was not essential to Harris's defense.

Harris's right to present a meaningful defense was not implicated by the exclusion of the surveillance footage or the investigator's testimony. Therefore, the abuse of discretion standard applies.

A trial court abuses its discretion if its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000) (alteration in original) (quoting *State v. McDonald*, 138 Wn.2d 680, 696, 981 P.2d

443 (1999)).  The exclusion of evidence lies largely within the discretion of the trial court.  *State v. Thomas*, 150 Wn.2d 821, 869, 83 P.3d 970 (2004).  And we may affirm a trial court's decision on any ground adequately supported by the record.  *State v. Huynh*, 107 Wn. App. 68, 74, 26 P.3d 290 (2001).  Ultimately, the appellant bears the burden of proving an abuse of discretion.  *Ashley*, 186 Wn.2d at 39.

       2.      No Abuse of Discretion in Excluding Evidence

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  ER 401.  Relevant evidence is generally admissible.  ER 402.  "The threshold to admit relevant evidence is very low.  Even minimally relevant evidence is admissible."  *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).  Yet, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  ER 403.

       a.      Home surveillance footage

Harris argues that the trial court erred when it excluded his home surveillance footage.  We disagree.

At trial, Harris testified to the events captured in the surveillance footage, and K.M. did not deny what had happened.  Both confirmed that K.M. gave Harris a hug right before he left for work that day.  Thus, the footage was cumulative.  It was well within the trial court's discretion to exclude cumulative evidence under ER 403.  Therefore, we hold that the trial court did not abuse its discretion in excluding Harris's home surveillance footage.

b.       Investigator's testimony

Harris argues that the trial court erred when it excluded his investigator's testimony. We disagree.

While the investigator's testimony about whether J.J.'s bedroom door could close was relevant to Harris's defense, the testimony was duplicative of Harris's testimony. During argument on the admission of the testimony, defense counsel stated that he planned to present pictures detailing the layout of Harris's home and examine Harris and the investigator on the layout. The trial court concluded the investigator's testimony would be cumulative because it would not add anything that the pictures and Harris could not provide, and Harris was in a better position to testify due to his familiarity with his home during the time period in question. Therefore, we hold that the trial court did not abuse its discretion in excluding the investigator's testimony as cumulative.

D.       RIGHT TO BE PRESENT AND THE PRESUMPTION OF INNOCENCE

Harris argues that the trial court violated his constitutional right to be present and the presumption of innocence when it ordered him to stop emoting at counsel table. We hold that the trial court did not violate Harris's constitutional right because he was physically present in the courtroom during the entire trial and he was not admonished in front of the jury.

We review constitutional claims de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). Under the Sixth and Fourteenth Amendments of the U.S. Constitution, a criminal defendant has a fundamental right to be present at all "critical stages" of trial. *Id.* Presence means physical presence and the ability to defend in person. WASH. CONST. art. I, § 22; *State v. Maryott*, 6 Wn. App. 96, 102-03, 492 P.2d 239 (1971). With this right flows the right to the "physical indicia of innocence which includes the right of the defendant to be brought before the court with

the appearance, dignity, and self-respect of a free and innocent man." *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999).

At the core of the right to be present rests the principle of fairness, and in that vein, the presumption of innocence cannot be jeopardized. *See Irby*, 170 Wn.2d at 900. When a defendant exhibits disruptive or defiant behavior, the trial court must be given sufficient discretion to handle the situation. *State v. Chapple*, 145 Wn.2d 310, 320, 36 P.3d 1025 (2001).

Here, the trial court's admonishments were done outside the presence of the jury. Although Harris was admonished to refrain from emoting, the admonitions do not rise to the level of violating any indicia of innocence because they were not seen by the jury and thus, were not inherently prejudicial. The admonitions did not single out Harris as particularly guilty or dangerous. Although the admonishments were emphasized to Harris due to his disruptive behavior, the trial court's orders to stop emoting were directed at both parties.

Also, the admonitions were a result of Harris's attempts to influence the jury and disrupt the court. The trial court had discretion to manage the situation and did so by prohibiting both parties, albeit Harris in particular, from emoting. Therefore, we hold that Harris's right to be present was not violated and there was no danger of destroying the presumption of innocence in the minds of the jury.

E.      CUMULATIVE ERROR

Harris argues that even if the alleged errors do not independently warrant reversal, the cumulative effect of the errors does. We disagree.

The cumulative error doctrine applies when more than one error occurred at the trial court level, but none alone warrant reversal. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375

(2003). Instead, the combined errors effectively denied the defendant a fair trial. *Id.* Numerous errors, harmless standing alone, can deprive a defendant of a fair trial. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). The defendant bears the burden of proving the cumulative effect of the errors is of a sufficient magnitude that retrial is necessary. *Lord*, 123 Wn.2d at 332.

Here, Harris is not entitled to relief based on cumulative error. Only two instances of nonprejudicial prosecutorial misconduct occurred, and we hold that Harris has not met his burden of showing the cumulative effect of the errors is of sufficient magnitude to require reversal. Therefore, we do not grant relief based on cumulative error.

F.      SAG

1.      Ineffective Assistance of Counsel

Harris argues that defense counsel was ineffective for failing to introduce his home surveillance footage. However, defense counsel did attempt to introduce Harris's home surveillance footage both before and during trial. Therefore, we hold that this argument fails because it is factually incorrect.

2.      Facts Not in Evidence

Harris argues that the prosecutor improperly asked about facts not in evidence when she questioned him about photographs that were not admitted. We disagree.

On direct examination of Harris, to show that J.J.'s bedroom door could not close because of the placement of J.J.'s bed and that Harris's bedroom did not have a door, four photographs were admitted depicting different views from the inside of Harris's home. However, none of the admitted photographs depicted J.J.'s bed in relation to the door nor the inside of Harris's bedroom doorframe. So on cross-examination, the prosecutor questioned Harris about whether other

photographs may exist and whether Harris had taken other photos. Harris testified that he had taken a photograph of J.J.'s bed in relation to the door and of the inside of his doorframe. By introducing a selective set of photographs, Harris opened the door to questioning about other photographs that might definitively decide the issue. Therefore, we hold that the prosecutor's conduct was proper.

3.    Granting and Denying Requests

Harris argues that the trial court erred when it "sustain[ed] all of [the] prosecuting attorney's requests, while denying all of [the] defense's requests." SAG at 2. Under RAP 10.10(c), while citations to the record and authority are not required, we will not consider a SAG if "it does not inform the court of the nature and occurrence of alleged errors." Here, Harris's use of the word "requests" is vague; it does not provide us with the ability to determine the nature and occurrence of the alleged errors. Therefore, we do not consider this argument.

CONCLUSION

We hold that (1) (a) the prosecutor committed misconduct by appealing to the passions and prejudices of the jury and expressing personal opinions on facts not in evidence, but Harris has waived his challenge because any resulting prejudice could have been cured by an instruction, (b) the prosecutor did not misrepresent the law, and (c) the cumulative effect of the prosecutor's misconduct does not require reversal; (2) Harris's ineffective assistance of counsel claim fails because defense counsel's representation was not deficient; (3) the trial court did not abuse its discretion in excluding Harris's home surveillance footage and his investigator's testimony because the evidence was cumulative; (4) the trial court did not violate Harris's right to be present or the presumption of innocence because he was physically present in the courtroom during the

26

entire trial and was not admonished in front of the jury; and (5) no cumulative error existed. We also hold that Harris's SAG challenges fail. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, C.J.

Johanson, J.