IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74130-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| BRYCE EARL SMILEY, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

BECKER, J. — Bryce Smiley, convicted of child rape and molestation, claims his trial was rendered unfair by an officer's testimony and by prosecutorial misconduct in argument. Contrary to Smiley's argument, the officer was describing his interrogation of Smiley, not offering an improper opinion on guilt. The prosecutor invited the jury to think about how difficult it would be to convict child molesters if the law required evidence corroborating the victim's testimony. This argument was improper, but because it was not incurably prejudicial, Smiley's failure to object waived the issue. We affirm.

FACTS

In 2006, when Smiley was 15 years old, his father remarried. Smiley moved into the household of his stepmother. Smiley's stepsister was eight years old at the time.

Smiley joined the military in January 2011. Thereafter, he did not spend much time at home, although he did visit while he was stationed near Tacoma. In December 2012, Smiley was deployed to Afghanistan. The next day, Smiley's stepsister disclosed that Smiley had sexually abused her on a regular basis since she was in the fourth grade. The disclosure led to a police investigation.

The State charged Smiley with one count of rape of a child in the first degree, two counts of child molestation in the first degree, two counts of rape of a child in the second degree, and two counts of rape of a child in the third degree. A seven-day trial occurred in May 2014. The jury convicted Smiley on all counts except for the charge of rape of a child in the first degree. Smiley appeals.

## OFFICER'S TESTIMONY

Detective Franz Helmcke interviewed Smiley's stepsister. She told Helmcke that although her parents had only recently learned about her allegations of sexual abuse by Smiley, she had spoken to several friends about it earlier. Helmcke interviewed the friends. The friends confirmed the earlier disclosures.

Helmcke interviewed Smiley, who had returned from Afghanistan. Smiley denied the allegations. When asked why his stepsister would be making up a story, Smiley told Helmcke that she might have been jealous about the extra attention he was getting at home before he left for overseas.

During trial, the prosecutor questioned Helmcke about his investigation, including the interview with Smiley. Helmcke testified that Smiley's explanation about the girl's motive to lie "didn't make sense."

2

Q. Did you ask [Bryce Smiley] specifically about these allegations that [his stepsister] had made?

A. Yes.

Q. What did he say about them?

A. He denied that anything like that had ever taken place.

. . . .

Q. Okay. And why would you ask him if they got along or if there's any issues between them?

A. Just to make sure that, you know, there isn't something because we—you know, in a case like this, we don't have any physical evidence and, you know, in this line of work it comes down to he-said/she-said a lot of the times. And, you know, there have been times when people have lied and tried to, you know, get people in trouble for doing things. And so, you know, with this case there's no physical evidence; we have the victim saying one thing and, you know, well, if she's lying, what's her motivation?

So I'm going to ask the suspect, you know, did you guys get along? Was there something between you? Because if there was something then, you know—I mean, it would help him out if there was some type of problem between them and, you know, maybe she was making it all up. But he said there was nothing.

Q. Did you specifically ask him if he knew of any reason why she would make it up?

A. Yes.

Q. And what did he say?

A. He didn't have any reason other than he thought she might have been jealous that he was getting attention because he was going to be deploying to Afghanistan.

Q. Okay. Did you confront him with that possibility about whether or not it made sense?

A. Yes.

Q. Okay. How so?

A. Just that, you know, when I talked to the friends, the friends had said that, yeah, she did tell them that these things had happened or something had happened. And this happened—you know, she told a friend a couple of years ago, so really did she set this master plan in place where she told friends, you know, seeing into the future that he's going to get deployed and she's going to be jealous so I better start, you know, a year or so ahead and start telling my friends about this so that when he gets deployed I can keep the story going and make it look real. So it just didn't make sense to me.

Q. Did he ever—did he have a response to that to help it make sense?

A. No.

Smiley claims that Helmcke made an impermissible comment on his veracity when he testified that Smiley's theory about jealousy as a motive to lie "didn't make sense."

A witness may not give, directly or by inference, an opinion on a defendant's guilt. To do so is to violate the defendant's constitutional right to a jury trial. When improper opinion testimony is expressed by a government official, such as a sheriff or police officer, the opinion may influence the jury and deny the defendant a fair and impartial trial. State v. Dolan, 118 Wn. App. 323, 329, 73 P.3d 1011 (2003). Testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence, is not improper opinion testimony. State v. Notaro, 161 Wn. App. 654, 662, 255 P.3d 774 (2011).

Notaro was a murder case. In an initial interview with a detective, the defendant said his mother was the one who shot the victim, and his role had been only to help her bury the body. In recounting the interview for the jury, the detective testified that he told the defendant the story was not believable. The detective told the defendant "to tell me the truth." Notaro, 161 Wn. App. at 665. The defendant confessed to being the shooter.

The defendant argued on appeal that the officer should not have been allowed to testify that he disbelieved the defendant's initial story. The court determined it was clear to the jury that the officer was not stating a personal opinion about the defendant's veracity. Rather, it was "an account of tactical interrogation statements designed to challenge the defendant's initial story and

4

elicit responses that are capable of being refuted or corroborated by other evidence or accounts of the event discussed." Notaro, 161 Wn. App. at 669. It gave the defendant the opportunity to explain why his account of what happened made sense despite its seeming inconsistency with other evidence. Notaro, 161 Wn. App. at 669-70.

The same is true here. Smiley suggested that his stepsister was making up a story to hurt him because of jealousy in connection with a recent event, his deployment overseas. Helmcke told Smiley his suggestion did not make sense in view of the disclosures his stepsister made to her friends years before. This was not an impermissible opinion regarding Smiley's veracity. Like in Notaro, Helmcke's testimony described an interrogation tactic.

PROSECUTORIAL MISCONDUCT

Smiley contends that prosecutorial misconduct in argument warrants reversal of his conviction even though he failed to object at trial.

The State's case rested on the credibility of Smiley's stepsister. There was no corroborating physical evidence, no confession, and no eyewitness testimony. Anticipating a defense argument that the evidence was insufficient, the prosecutor repeatedly asked the jury to consider how difficult it would be to hold sexual abusers responsible if the victim's word was not enough:

> That is enough for proof beyond a reasonable doubt. Nothing more is required. . . . . There's nothing that says there needs to be corroborating evidence of any kind, some kind of physical evidence, some kind of eyewitness . . . . The law does not require it.
> Can you imagine a system where it was required? . . . It's not unusual for kids not to disclose to anyone where it's going to

come to the attention of the system until months, sometimes years later. . . .

. . . .

If the system did work that way, kids would have to be told, we're sorry, we can't prosecute your case, we can't hold your abuser responsible because all we have is your word, and that's not enough. No one's going to believe a kid or a teen, and we need something else. We don't do that. That's not how the system works.

If the law required that additional evidence, we couldn't prosecute so many of these cases, the majority of these cases. We couldn't hold the majority of sexual abusers responsible. We couldn't hold [the victim's] abuser responsible. So the law doesn't require it. All you need is someone telling you it happened, and if you believe that person, if you believe [the girl], that's enough, you are satisfied beyond a reasonable doubt of the defendant's guilt.

The prosecutor concluded by saying:

Don't let the defendant get away with committing these acts of abuse . . . against her just because no one saw it happen, just because he committed it in such a manner that there's not going to be lasting evidence, because there never really is anyway.

Smiley, as anticipated, argued that the girl's word alone was not sufficient proof. Referring to the reasonable doubt instruction, he said, "Now, what it doesn't talk about is what the word 'proof' is or what the word 'proof' means. And the common meaning of the word proof is to verify or to establish, to confirm, or to corroborate. And you can't, again, merely assume that an accusation made by anybody . . . is true, unless there is some kind of proof that it is true." He equated proof with corroboration: "Really under no other circumstances would an allegation by itself, without corroboration or without proof, be accepted as proof positive." He attacked the girl's testimony as vague and inconsistent with respect to the dates of particular incidents. He suggested that the stories she told her friends were fabricated to gain sympathy. He returned again to the theme of lack of corroborating evidence: "What don't we have in this case? Well, we don't

have anything else. We have nothing. . . . There's no physical evidence, there's no eyewitness evidence, there's no admissions or confessions in this case." He reviewed the testimony of the girl's friends and said, "They didn't verify the allegations, they didn't add anything to the allegations, they didn't corroborate the allegations, they simply repeated the allegations, and I'm going to be blunt with you: A lie does not become the truth simply because it's retold or repeated. It's still a lie. There is no evidence."

In rebuttal, the prosecutor reiterated that if "the system" required corroborating evidence in sex cases, "we'd have to tell the kids, sorry . . . we can't hold your abuser responsible":

> One of the main points of defense counsel's argument, again, is that there is nothing else here except [the girl's] testimony.
> . . .
> . . . If you follow through with that, we could never hold so many people responsible for abusing children. It would be that system that I referenced in my initial closing, where we'd have to tell the kids, sorry, because there's nothing corroborating, because there's nothing confirming what you are telling us, we can't prosecute, we can't hold your abuser responsible, and that is not the way that it is, folks. It is not. That is not our system. We don't need anything else. The law doesn't require it. Our system doesn't require it.

Division Two of this court recently held a similar argument improper and reversed the conviction on that basis. State v. Thierry, 190 Wn. App. 680, 360 P.3d 940 (2015), review denied, 185 Wn.2d 1015 (2016). In Thierry, the defendant was charged with raping and molesting his eight-year-old son. The prosecutor said in her initial closing argument that sex crimes against children could rarely be prosecuted if the testimony of the victim had to be confirmed by other evidence, "'because people don't rape children in front of other people and

often because children wait to tell.'" Thierry, 190 Wn. App. at 685. Defense counsel brought up inconsistencies in the child's testimony and suggested the child's disclosures were the result of manipulative techniques used by a therapist in counseling sessions. Counsel argued that while it was a good thing to let children know they will not get in trouble for reporting sexual abuse, it was a terrible thing to help them create false stories. Thierry, 190 Wn. App. at 687. The prosecutor, in rebuttal, portrayed the defense argument as an assertion that children can't be believed because they make up stories. If that were true, the prosecutor argued, the State might as well give up prosecuting child rape and molestation cases, and the law might as well say that the word of a child is not enough. Thierry, 190 Wn. App. at 687-88. At this point, Thierry objected that the prosecutor was fueling jury passion and prejudice. The objection was overruled.

On appeal, the Thierry court held that the argument was an improper emotional appeal. The argument invited the jury to rely on "a threatened impact on other cases, or society in general, rather than on the merits of the State's case." Thierry, 190 Wn. App. at 691. The court rejected the State's suggestion that the rebuttal argument was a proper response to the defense argument, pointing out that the defense never argued—as the prosecutor claimed—that the jury should not believe the child witness simply because he was a child. Thierry, 190 Wn. App. at 692. "The implication is clear enough: were the jury to agree with defense counsel, they would put other children in danger." Thierry, 190 Wn. App. at 692. The court found the argument was prejudicial because it created the risk that the jury decided to credit the child's testimony for improper reasons.

The risk was exacerbated by the prosecutor's misrepresentation of defense counsel's argument. Thierry, 190 Wn. App. at 694-95.

Here, the prosecutor similarly argued that the State might as well give up prosecuting sex abuse cases if the victim's word was not enough for conviction. "If the system did work that way, kids would have to be told, we're sorry, we can't prosecute your case, we can't hold your abuser responsible because all we have is your word, and that's not enough. No one's going to believe a kid or a teen, and we need something else. We don't do that. That's not how the system works." As explained in Thierry, the implication was clear: if the jury agreed with defense counsel and refused to convict without corroborating evidence, other children are in danger.

The State defends the prosecutor's remarks on the basis that it was permissible to explain to a jury why corroborating evidence is not required. We disagree. A proper argument stays within the bounds of the evidence and the instructions in the case at hand. It is unnecessary to explain why the law is the way it is. Such explanations tend to lead into policy-based arguments that divert the jury from its fact-finding function. In effect, the jurors here were asked to align themselves with "the system" in deciding what the necessary quantum of proof should be from a public policy perspective. Jurors should not be made to feel responsible for ensuring that the criminal justice system is effective in protecting children. We agree with the Thierry court that this kind of argument is prejudicial because it creates the risk that the jury will decide to believe the child's testimony for improper reasons.

In Thierry, the defendant objected at the point where the prosecutor argued in rebuttal that if the jury accepted the defense theory, "'we might as well stop prosecuting cases.'" Thierry, 190 Wn. App. at 688 & n.5. The court overruled the objection and permitted the prosecutor to continue. Smiley did not object at any point. We must decide whether "the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

A defendant's failure to object at trial waives the challenge unless the reviewing court can determine that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. Emery, 174 Wn.2d at 761. It is generally regarded as unwise to require a trial court to intervene in an argument without an objection by defense counsel. State v. Neidigh, 78 Wn. App. 71, 80, 895 P.2d 423 (1995). An objection is unnecessary in cases of incurable prejudice only because there is, in effect, a mistrial and a new trial is the only and the mandatory remedy. Emery, 174 Wn.2d at 762. Accordingly, reviewing courts focus less on whether the prosecutor's misconduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured by an instruction. Emery, 174 Wn.2d at 762.

Smiley contends the prejudice interjected by the prosecutor's improper remarks was incurable. He relies on State v. Powell, 62 Wn. App. 914, 816 P.2d 86 (1991), review denied, 118 Wn.2d 1013 (1992). In Powell, the prosecutor

improperly argued that "'we'" are declaring "'open season on children'" if we refuse to believe them when they disclose sexual abuse:

> "[W]hat happens when we refuse to believe the children when we tell them, yes, if something happens you're supposed to tell? And then when they do, in fact, tell something has happened to them, what do we do? We don't believe them. We refuse to believe them. What does that tell the kids? . . . . It tells them it's fine. Yeah. You can go ahead and tell, but don't expect us to do anything because if it's an adult, we're sure as heck going to believe the adult more than we believe the child. I mean, we know adults don't lie; but, yeah, we know kids lie in things of that sort. . . . Isn't that what we're telling them with regard to this? Are we . . . declaring open season on children to say: Hey, it's all right. You can go ahead and touch kids and everything because—"

Powell, 62 Wn. App. at 918 & n.4. In Thierry, the court quoted the above passage in Powell and noted that the resulting prejudice was held incurably prejudicial "even though Powell had not requested a remedial instruction in the trial court." Thierry, 190 Wn. App. at 690-91.

The Powell argument and the argument in this case are similar in that both invited the jury to consider the systematic consequences of failing to believe children when they report sexual abuse. But there are also significant differences. In Powell, the image of declaring "open season on children" was more inflammatory than anything said by the prosecutor in the present case. And in Powell, it was important to the court's analysis that the prejudicial remarks "were made at the completion of the final closing argument, immediately prior to the jury beginning its deliberations." Powell, 62 Wn. App. at 919. For this reason, the court concluded it was "one of those cases of prosecutorial misconduct in which '[t]he bell once rung cannot be unrung.'" Powell, 62 Wn.

11

App. at 919, quoting State v. Trickel, 16 Wn. App. 18, 30, 553 P.2d 139 (1976) (alteration in original).

Here, the prosecutor opened up her theme in the initial closing argument. Smiley could have objected when the prosecutor first began to argue that "kids would have to be told, we're sorry, we can't prosecute your case, we can't hold your abuser responsible because all we have is your word." At that point, the court could have decisively derailed the argument by sustaining the objection and instructing the jury to disregard the improper comments. Instead of objecting as the defendant did in Thierry, Smiley picked up the theme in his own closing argument and made it his own, asserting that the jury *should* demand corroborating evidence in order to convict. In rebuttal, the prosecutor repeated the argument that if corroborating evidence were required, the majority of molesters could not be convicted. Again, Smiley raised no objection. Because the prejudice was not incurable, we conclude Smiley has waived the issue of the improper argument.

## STATEMENT OF ADDITIONAL GROUNDS

In a statement of additional grounds under RAP 10.10(a), Smiley contends that he was denied effective assistance of counsel by defense counsel's failure to object to the State's improper arguments. Only in egregious circumstances will the failure to object constitute incompetence of counsel justifying reversal. Neidigh, 78 Wn. App. at 77. If the failure to object could have been a legitimate trial strategy, it cannot serve as a basis for a claim of ineffective assistance.

Neidigh, 78 Wn. App. at 77. In this case, defense counsel's failure to object may have been a strategic choice to join the State in making a policy argument.

The remaining arguments in Smiley's statement of additional grounds rely on inaccurate descriptions of the record and do not warrant scrutiny on appeal.

Affirmed.

Becker, J.

WE CONCUR:

Cox, J.

SCHINDLER, J. (dissenting) — I agree the prosecutor's argument was improper and prejudicial but disagree with the conclusion that the resulting prejudice could have been neutralized by a curative instruction.

This case turned on witness credibility. A.B. testified that her stepbrother Smiley sexually abused her. Smiley testified and denied sexually abusing A.B.

At the beginning of closing argument, the prosecutor told the jury, "The real question, the only question that I suspect you will be talking about in the jury room is whether or not these acts of sexual intercourse and sexual contact actually occurred."

After addressing the instructions defining "sexual contact," the prosecutor states the only evidence of whether sexual contact occurred was the testimony of A.B.

> So, back to the question of did these acts occur? What's your evidence? Well, as you may have guessed way back during jury selection, and now that you have heard the evidence, it's [A.B.]. Your evidence is [A.B.] and her testimony.

The prosecutor argued the testimony of A.B. "is enough for proof beyond a reasonable doubt," and the instructions on the law did not require corroboration.

> So your evidence is [A.B.] telling you what happened to her, and that, ladies and gentlemen, is enough.
> That is enough for proof beyond a reasonable doubt. Nothing more is required. You will not find anywhere in these instructions — and these instructions are the law that apply in this case — you will not find here that you have to find something else in addition to [A.B.]'s testimony. There's nothing that says there needs to be corroborating evidence of any kind, some kind of physical evidence, some kind of eyewitness, that is not required. The law does not require it.

The prosecutor then told the jury, "If the system did work that way," the State could not bring charges in the majority of sex abuse cases and hold "sexual abusers

responsible."

> If the system did work that way, kids would have to be told, we're sorry, we can't prosecute your case, we can't hold your abuser responsible because all we have is your word, and that's not enough. No one's going to believe a kid or a teen, and we need something else. We don't do that. That's not how the system works.
>
> If the law required that additional evidence, we couldn't prosecute so many of these cases, the majority of these cases. We couldn't hold the majority of sexual abusers responsible. We couldn't hold [A.B.]'s abuser responsible. So the law doesn't require it. All you need is someone telling you it happened, and if you believe that person, if you believe [A.B.], that's enough, you are satisfied beyond a reasonable doubt of the defendant's guilt.

The defense attorney argued the vague allegations and inconsistent testimony of

A.B. did not support the charges.

> So, again, there's a lot of inconsistencies about [A.B.]'s allegations.
>
> And again, what's very, very important is these are the allegations, these are the statements that the prosecutor says, that's our case. Our case, from what the prosecutor has said, are these statements, and these statements, again, are vague, inconsistent, and they're not credible.

The defense attorney argued the jury should not disregard Smiley's testimony. "You

also heard Bryce testify that he did not commit any of these allegations. He did not

have any sexual contact with his stepsister."

In rebuttal, the prosecutor reiterated that if the jury did not convict, the State

"could never hold so many people responsible for abusing children."

> One of the main points of defense counsel's argument, again, is that there is nothing else here except [A.B.]'s testimony. And I keep telling you, of course, that it doesn't matter. It doesn't matter. And I am going to tell you again, it doesn't matter.
>
> If you follow through with defense counsel's argument and reasoning, there's nothing beyond [A.B.]'s allegations. The State has nothing to show you, no physical evidence. [A.B.] was examined and there was no evidence. If you follow through with that, we could never hold so many people responsible for abusing children. It would be that system that I referenced in my initial closing, where we'd have to tell the

15

kids, sorry, because there's nothing corroborating, because there's nothing confirming what you are telling us, we can't prosecute, we can't hold your abuser responsible, and that is not the way that it is, folks. It is not. That is not our system. We don't need anything else. The law doesn't require it. Our system doesn't require it.

The prosecutor's argument that the jury instructions on the law do not require corroboration is not improper. But telling the jury that if they demand corroboration and do not convict, children will not be protected and the State "could never hold so many people responsible for abusing children," is a flagrant and ill-intentioned argument designed to appeal to fear and the passion and prejudice of the jurors.

Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). The prosecutor does not represent the victims in a criminal trial. RPC 3.8, cmt. 1. A prosecutor is a quasi-judicial officer who has a duty " 'to act impartially in the interest only of justice.' " State v. Monday, 171 Wn.2d 667, 676 n.2, 257 P.3d 551 (2011) (quoting People v. Fielding, 158 N.Y. 542, 547, 53 N.E. 497 (1899)).

Arguments intended to incite fear are irrelevant and inflammatory and an improper appeal to passion and prejudice. In re Pers. Restraint of Cross, 180 Wn.2d 664, 724-25, 327 P.3d 660 (2014); Glasmann, 175 Wn.2d at 704; ABA, STANDARDS FOR CRIMINAL JUSTICE std. 3-5.8(c) (2d ed. 1980)). The comments to ABA Standards emphasize the significance and the force and effect of a prosecutor's argument:

> The prosecutor's argument is likely to have significant persuasive force with the jury. Accordingly, the scope of argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct. Prosecutorial conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige

associated with the prosecutor's office but also because of the fact-finding facilities presumably available to the office.

ABA, STANDARDS commentary to std. 3-5.8.

The prosecutor's argument in this case was a blatant attempt to appeal to the fear of the jurors and sway the jurors to convict in order to protect children and hold sexual abusers accountable. In the context of the issues in the case and the theme of the prosecutor's closing argument, there is a substantial likelihood that the prosecutor's flagrant and ill-intentioned statements affected the verdict, and I would reverse.