## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55185-3-II |
| Respondent, | |
| v. | |
| JOSEPH ADAM BERCIER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Joseph Adam Bercier raped his 15-year-old daughter, AB. After AB reported the rape to police, officers pulled Bercier over to arrest him. As soon as an officer opened the driver's side door of the car and told Bercier he was under arrest, Bercier accelerated and fled. The car door swung back and hit the officer's wrist, causing a minor injury. After Bercier's arrest, his wife found a short-barreled shotgun in the garage.

A jury found Bercier guilty of third degree rape of a child, attempting to elude a pursuing police vehicle, third degree assault of a police officer, first degree unlawful possession of a firearm, and unlawful possession of a short-barreled firearm. The trial court imposed an exceptional sentence and imposed community custody only for the assault conviction.

Bercier appeals his convictions for rape of a child and assault. He argues his conviction for rape of a child should be reversed due to improper opinion testimony, prosecutorial misconduct, and, in the alternative, ineffective assistance of counsel and cumulative error. He argues his conviction for assault should be reversed because the State failed to prove that he intended to place

the officer in apprehension or fear of bodily injury. We affirm Bercier's conviction for rape of a child and reverse his conviction for assault.

Bercier also appeals his sentence. He asserts that his trial counsel was ineffective for failing to argue that the convictions for unlawful possession of a firearm and unlawful possession of a short-barreled firearm constituted the same criminal conduct, that the trial court erred by imposing community custody conditions unrelated to the assault crime, and that his offender score included a conviction for unlawful possession of a controlled substance in violation of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The State concedes all of these errors, and we accept the State's concessions.

We reverse Bercier's conviction for third degree assault of a police officer and affirm his remaining convictions. We remand for the trial court to vacate the assault conviction, strike the associated community custody conditions, and resentence Bercier on all remaining counts with corrected offender scores, considering Bercier's convictions for unlawful possession of a firearm and unlawful possession of a short-barreled firearm as the same criminal conduct.

FACTS

AB's father raped and sexually abused her when she was 15 years old by forcing her to drink alcohol and consume controlled substances and then committing rape. After AB told her mother that Bercier had raped her, AB and her mother gave separate statements to Officer Brandi Zieber.

When Zieber testified at trial, the State asked, "And so after taking those two statements, what did you do next?" Verbatim Report of Proceedings (VRP) (Nov. 13, 2019) at 174. Zieber responded, "I told them that I would be in contact with some other officers and let[] them know

that I had probable cause at that time for the arrest of Joseph Bercier and that I would update them on what was to come after that." *Id.* Zieber then notified the rest of the department that they had probable cause to arrest Bercier and provided them with descriptions of Bercier and the vehicle he was driving, which belonged to AB's mother.

Early the next morning, Officer Nathan Nussbaum was on patrol when he saw the car that Zieber had described. He pulled the car over and recognized the driver as Bercier. Nussbaum approached from the passenger side of the car and ordered Bercier to keep his hands on the steering wheel while he waited for other officers to arrive.

When Officer Gary Sexton arrived, he approached from the driver's side of the car and opened Bercier's door. Sexton informed Bercier that he was under arrest, and Bercier "just hit the gas and fled the scene." *Id.* at 191; *see also id.* at 182 (Nussbaum testifying, "[A]s soon as . . . Sexton said [']you're under arrest,['] Mr. Bercier fled."); VRP (Nov. 14, 2019) at 21 (third officer testifying that "the car immediately took off"). The jury was also shown a video of Sexton opening the car door and Bercier immediately driving away.

When Bercier "hit the gas[,] . . . the door flung back and struck [Sexton] on [his] right wrist causing a small laceration and bruising." VRP (Nov. 13, 2019) at 192. Sexton speculated that Bercier was aware Sexton was standing in the doorway, but the trial court sustained an objection to this testimony and instructed the jury to disregard it.

Bercier never tried to drive the car toward Sexton, and Sexton never testified that he experienced fear or apprehension. On cross-examination, Bercier's counsel asked Sexton whether Bercier fled to "get away from" the officers. *Id.* at 199. Sexton responded, "I would speculate that's what he was trying to do, yes." *Id.*

3

Bercier then drove through multiple red traffic lights "at a high rate of speed." *Id.* at 183. The speed limit was 25 miles per hour, and Sexton estimated that Bercier "was going at least 60 miles [per] hour." *Id.* at 194. Shortly thereafter, officers located the car, but it had been abandoned. Bercier was eventually arrested in Olympia.

Bercier had locked the family's garage with two padlocks and prohibited anybody else from entering without his supervision. When the car was returned to AB's mother, she found a "bundle of keys" in it. *Id.* at 164. Some of these keys unlocked the garage. AB's mother entered the garage and found several weapons in a sports bag, including a short-barreled shotgun. She called police and asked them to take the bag. Fingerprints from tape that had been wrapped around the grip of the shotgun matched Bercier's fingerprints. Bercier had previously been convicted of a felony offense.

A.      Motion to Dismiss, Jury Instructions, and Closing Arguments

After the close of evidence at trial, Bercier moved to dismiss the third degree assault charge, arguing the State failed to present evidence that Bercier "intended to assault anybody." VRP (Nov. 14, 2019) at 83. The assault charge was based on an alleged assault of Sexton when Bercier fled the traffic stop. The State responded that Bercier did not "have to intend, necessarily, that the crime result, but his action was intentional" when he sped up and drove away. *Id.* The trial court agreed that evidence of an "intentional touching or striking" was "not there," and the State does not appeal this ruling. *Id.* at 84. But the trial court denied Bercier's motion to dismiss, reasoning that the jury could find Bercier created a reasonable apprehension of fear or bodily injury.

Relevant to this charge, the trial court instructed the jury that "[a]n assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." Clerk's Papers (CP) at 40.

In closing, the State argued that when officers pulled Bercier over, Bercier hit the gas and fled because he did not want to be arrested. According to the State, Bercier knew that "the best way to get [Sexton] away from the car" was to place him in reasonable fear that he would be hit with and injured by the car. VRP (Nov. 14, 2019) at 99. "So by [Bercier] hitting the gas with . . . Sexton in that door well, that is assault in the third degree." *Id.*; *see also id.* at 114 ("He probably did just react. But his intent was to get that officer away from his car, by making him think he was going to get hit."). The State further argued that "in this case, not only was it reasonable for . . . Sexton to fear bodily injury, he actually suffered some minor bodily injury." VRP (Nov. 14, 2019) at 99. Bercier argued his only intention was to get away.

Addressing the child rape charge, Bercier argued in closing that there was "emotional testimony," but there was not "any corroborating evidence." *Id.* at 107. "What you have is a bare allegation with no follow up whatsoever, and no corroborative evidence. That should give you grave concern." *Id.* at 109. In rebuttal, the State responded that "the law does not require any corroboration. Specifically, the law is that the testimony of the victim, if you believe her beyond a reasonable doubt[,] is sufficient to sustain a conviction." *Id.* at 117; *see* RCW 9A.44.020(1). "And when you think about what these cases are, it would be almost impossible if that weren't the standard" because these crimes are not typically committed in public places or around other people. VRP (Nov. 14, 2019) at 117.

The jury found Bercier guilty as charged of third degree rape of a child, attempting to elude a pursuing police vehicle, third degree assault of a police officer, first degree unlawful possession of a firearm, and unlawful possession of a short-barreled firearm. The jury also returned a special verdict finding that when Bercier attempted to elude a police vehicle, his actions threatened others with physical injury or harm.

B.    Sentencing

Both parties agreed that Bercier had an offender score of 12. Bercier's offender score included one prior conviction for unlawful possession of a controlled substance.

The trial court imposed an exceptional sentence by ordering Bercier's sentences for rape of a child, attempting to elude a pursuing police vehicle, and unlawful possession of a firearm to run consecutively to each other and to all other counts for a total confinement term of 217 months. In support of the exceptional sentence, the trial court explained that Bercier "committed multiple current offenses and [his] high offender score results in some of the current offenses going unpunished." CP at 76; *see also* CP at 77 (citing RCW 9.94A.535(2)(c)). Additionally, the jury found an aggravating factor that Bercier endangered others when eluding a police vehicle.

The trial court imposed nine months of community custody on the assault conviction. As a condition of community custody, the trial court required Bercier to "[o]btain a sexual deviancy evaluation and follow all treatment recommendations." CP at 96. It also prohibited him from contacting any juveniles or vulnerable adults without supervision; changing treatment providers without approval; possessing or pursuing any sexually explicit material; accessing the Internet, e-mail, or social media without permission; entering "X-rated movies, peep shows, or adult book

stores;" loitering or frequenting places where children congregate; and contacting AB and her family. *Id.*

Bercier appeals his convictions for third degree rape of a child and third degree assault of a police officer. He also appeals his sentence.

ANALYSIS

I. THIRD DEGREE RAPE OF A CHILD

Bercier argues his conviction for third degree rape of a child should be reversed because Officer Zieber impermissibly expressed an opinion on Bercier's guilt and the prosecutor committed misconduct during closing argument. Alternatively, he argues his trial counsel was ineffective for failing to object to these errors. Bercier further argues that even if these errors were insufficient to warrant reversal independently, their cumulative effect deprived him of a fair trial. We disagree.

A.      Opinion Testimony

Bercier argues Zieber impermissibly expressed her opinion on Bercier's guilt when she testified that after interviewing AB and AB's mother, she told them she had probable cause to arrest Bercier. The State responds that this was not a manifest constitutional error warranting review for the first time on appeal because the officer's testimony was not an "'explicit or nearly explicit'" expression of her opinion on Bercier's guilt. Br. of Resp't at 4 (citing *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007)). It was "a fleeting reference to having probable cause to arrest." *Id.* at 7.

"The role of the jury is to be held 'inviolate' under Washington's constitution." *State v. Montgomery*, 163 Wn.2d 577, 590, 183 P.3d 267 (2008). The jury alone is responsible for

weighing the evidence and deciding what facts have been proved. *Id.* Therefore, it is "clearly inappropriate" for witnesses to express their personal beliefs on the defendant's guilt or innocence. *Id.* at 591. "Such opinions are unfairly prejudicial because they invade the fact finder's exclusive province." *State v. Johnson*, 152 Wn. App. 924, 930, 219 P.3d 958 (2009).

"When improper opinion testimony is expressed by a government official, such as a sheriff or police officer, the opinion may influence the jury and deny the defendant a fair and impartial trial." *State v. Smiley*, 195 Wn. App. 185, 189-90, 379 P.3d 149 (2016). Although in a criminal case the jury already knows officers arrested the defendant because they believed the defendant may have committed a crime, "this unavoidable state of affairs does not justify allowing explicit opinions" on a defendant's guilt. *Montgomery*, 163 Wn.2d at 595. However, testimony is not improper opinion testimony if it "is not a direct comment on the defendant's guilt," is "otherwise helpful to the jury," and is "based on inferences from the evidence." *Smiley*, 195 Wn. App. at 190.

Where the defendant failed to object to the challenged testimony during trial, they must satisfy the "narrow" exception allowing us to review manifest constitutional errors for the first time on appeal. *Kirkman*, 159 Wn.2d at 936 (applying RAP 2.5(a)(3)). To show that an error was "'manifest,'" the defendant must show that the error actually prejudiced them. *Id.* at 926-27. In the context of opinion testimony in child sex offense cases, "'[m]anifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim." *Id.* at 936.

In *Kirkman*, the Washington Supreme Court found no improper opinion testimony where a detective's challenged testimony was "simply an account of the interview protocol he used." *Id.* at 931. The detective never testified that he personally believed the child victim, so there was no manifest constitutional error. *Id.* Testimony describing protocols "only provides context;" it "does

8

not improperly comment [on] the truthfulness of the victim." *Id.* at 934; *see also State v. Song Wang*, 5 Wn. App. 2d 12, 28, 424 P.3d 1251 (2018) (holding a detective's statement was not improper opinion testimony where it was offered within the context of the detective "explaining the course of the investigation").

Here, the State asked Zieber what she did next after taking AB and AB's mother's statements. Zieber responded, "I told them that I would be in contact with some other officers and let[] them know that I had probable cause at that time for the arrest of Joseph Bercier and that I would update them on what was to come after that." VRP (Nov. 13, 2019) at 174. Bercier did not object to this response.

Like in *Kirkman*, Zieber never testified to whether she personally believed AB or AB's mother. Her statement that she had probable cause to arrest Bercier was given in the context of an explanation about the course of the department's investigation. Because Zieber did not explicitly, or nearly explicitly, state that she believed AB, Bercier fails to show a manifest constitutional error that we may review for the first time on appeal. RAP 2.5(a)(3); *Kirkman*, 159 Wn.2d at 936.

B.    Prosecutorial Misconduct

Bercier next argues the prosecutor committed reversible misconduct during closing argument when she told the jury that if corroboration of victim testimony were required, prosecuting sex offenses would be "'almost impossible.'" Am. Br. of Appellant at 24 (quoting VRP (Nov. 14, 2019) at 117). We disagree.

To establish prosecutorial misconduct, a defendant must show that "the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Because Bercier failed to object to the alleged misconduct during trial, he is "deemed to

have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61.

Even a prosecutor's plainly improper remarks "do not merit reversal 'if they were invited or provoked by defense counsel and are in reply to [their] acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective.'" *State v. Thierry*, 190 Wn. App. 680, 690, 360 P.3d 940 (2015) (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). We review the prosecutor's arguments "'in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given.'" *Id.* at 689 (quoting *Russell*, 125 Wn.2d at 85-86).

This court has previously held that it is an improper emotional appeal to invite the jury to convict a defendant of a child sex offense "in order to allow reliance on the testimony of victims of child sex abuse and to protect future victims of such abuse." *Id.* at 691. In *Thierry*, the prosecutor repeatedly argued, in both their initial closing and their rebuttal argument, that corroboration of a victim's testimony is not required to prove child sex offenses because "'if it were, the State could never prosecute any of these types of cases'" and "'then the State may as well just give up prosecuting these cases.'" *Id.* at 685, 688 (emphasis omitted). The prosecutor implied that if the jury were to acquit the defendant, "they would put other children in danger." *Id.* at 692.

Division One has also cautioned, "Jurors should not be made to feel responsible for ensuring that the criminal justice system is effective in protecting children." *Smiley*, 195 Wn. App. at 195. In *Smiley*, the prosecutor argued, in part, "'If the law required that additional [corroborative] evidence, we couldn't prosecute so many of these cases, the majority of these cases. We couldn't hold the majority of sexual abusers responsible. We couldn't hold [the victim's]

abuser responsible.'" *Id.* at 191 (second alteration in original). Division One explained that this form of argument can be prejudicial because it encourages jurors to believe children "for improper reasons." *Id.* at 195.

However, this argument does not always warrant reversal. In *Smiley*, Division One concluded the defendant waived any error because the trial court "could have decisively derailed" the improper argument by sustaining a timely objection, and Smiley did not object. *Id.* at 197.

Here, unlike in *Thierry* and *Smiley*, the prosecutor did not rely on any public policy theme for her initial closing argument, nor did she repeatedly assert such a theme. She made a single arguably improper remark during rebuttal, after defense counsel focused most of his closing argument on the lack of corroboration in the State's evidence. *See, e.g.*, VRP (Nov. 14, 2019) at 109 ("What you have is a bare allegation with no follow up whatsoever, and no corroborative evidence. That should give you grave concern.").

We review the prosecutor's isolated remark in the context of her otherwise proper closing arguments and recognize that it was a response to defense counsel's closing. Moreover, an objection could have "decisively derailed" the argument and any resulting prejudice, and Bercier failed to object. *Smiley*, 195 Wn. App. at 197. The remark did not rise to the level of flagrant and ill-intentioned misconduct, and we decline to reverse Bercier's conviction for third degree rape of a child on this basis.

C.      Assistance of Counsel

Bercier argues that even if his claim of improper opinion testimony fails to satisfy the RAP 2.5(a)(3) exception, his trial counsel was constitutionally ineffective for failing to object to the testimony. He similarly argues that if this court holds the prosecutor's argument could have been cured by an objection, his counsel was ineffective for failing to object. Again, we disagree.

To succeed on a claim of ineffective assistance of trial counsel, Bercier must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). Counsel's performance is not deficient if it "can be characterized as legitimate trial strategy or tactics." *Id.* at 458. Counsel's deficient performance is not prejudicial unless there is a reasonable probability that, had counsel not performed deficiently, the result of the proceeding would have been different. *Id.*

Decisions of "whether and when to object fall firmly within the category of strategic or tactical decisions." *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id.* (quoting *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989)). This is particularly true during closing arguments. *State v. Blockman*, 198 Wn. App. 34, 42, 392 P.3d 1094 (2017). The defendant must also show that an objection would have been sustained. *Johnston*, 143 Wn. App. at 19.

As discussed above, Zieber testified that she had probable cause to arrest Bercier, not that she believed AB. The testimony was offered in the context of Zieber explaining the steps of the investigation. For the same reasons this was not a manifest constitutional error, it was not an

egregious circumstance involving testimony central to the State's case. Therefore, counsel's failure to object does not justify reversal.

And although an objection could have cured any prejudice resulting from the prosecutor's argument about corroboration, the brief and isolated remark was neither egregious nor central to the State's argument. For the same reason it was not flagrant and ill-intentioned misconduct, trial counsel was not deficient for failing to object.

D.     Cumulative Error

Finally, Bercier argues cumulative error deprived him of his right to a fair trial because the child rape charge "hinged on credibility" and "the opinion testimony and the misconduct in closing argument operated to bolster the credibility of the complaining witness." Am. Br. of Appellant at 36-37. Where multiple errors combine to deprive the defendant of a fair trial, the cumulative error doctrine requires reversal. *State v. Lazcano*, 188 Wn. App. 338, 370, 354 P.3d 233 (2015). But it is the defendant's burden to prove "an accumulation of error of sufficient magnitude to warrant a new trial." *Id.* Here, Bercier failed to prove any errors that were sufficiently manifest, flagrant, or egregious to warrant a new trial, whether considered in isolation or collectively. We affirm his conviction for third degree rape of a child.

## II. THIRD DEGREE ASSAULT OF AN OFFICER

Bercier argues the State failed to prove he intended to assault a police officer and "[a]n accidental injury is not third-degree assault." Am. Br. of Appellant at 37. "The mere fact that

Sexton was hit by the car door does not amount to proof beyond a reasonable doubt that he was intentionally placed in reasonable fear." *Id.* at 40.[1] We agree.

Evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). For purposes of a sufficiency challenge, the defendant "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). "However, inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

The State charged Bercier with assaulting a law enforcement officer who was performing their official duties at the time of the assault. *See* RCW 9A.36.031(1)(g). The term "assault" is not defined by statute, so courts look to common law definitions for guidance. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). "Three definitions of assault are recognized in Washington: (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *Id.* The State argued during closing that Bercier committed assault by placing Sexton in reasonable apprehension of being hit by the car. The State told the jury, "For . . . assault in the third degree, the State is arguing . . . [that a]n assault is an act done with the intent

---

[1] The State argues only that Bercier assaulted Sexton by putting him in apprehension of harm; it does not claim Bercier committed an actual or attempted battery.

14

to create in another apprehension and fear of bodily injury, which does, in fact, create in that person a reasonable apprehension [and] imminent fear of bodily injury." VRP (Nov. 14, 2019) at 99.

To obtain a conviction under RCW 9A.36.031(1)(g), specifically for third degree assault of an officer, "the State must prove that a defendant intended to commit and did commit an assault against another person," that the person was a law enforcement officer performing official duties at the time of assault, that the officer "had a reasonable apprehension and imminent fear of bodily injury at the time of the assault," and that "the defendant's actions created that apprehension." *State v. Brown*, 140 Wn.2d 456, 470, 998 P.2d 321 (2000).

Assault by apprehension of harm requires proof of specific intent to cause apprehension. *See Cardenas-Flores*, 189 Wn.2d at 266; *see also State v. Stevens*, 158 Wn.2d 304, 314, 143 P.3d 817 (2006) (Madsen, J., dissenting). Because the State must prove a specific intent, assault is not a strict liability crime. *State v. Brown*, 94 Wn. App. 327, 342, 972 P.2d 112 (1999), *aff'd*, 140 Wn.2d 456; *see also State v. Krup*, 36 Wn. App. 454, 458, 676 P.2d 507 (1984) ("[N]egligence alone is insufficient.").

Here, the three officers who were present when Bercier was pulled over all testified that as soon as Bercier was told he was under arrest, he "just hit the gas and fled the scene." VRP (Nov. 13, 2019) at 191, 182 ("he just slammed on the gas and just took off"); VRP (Nov. 14, 2019) at 21 ("the car immediately took off"). When Bercier "hit the gas[,] . . . the door flung back and struck [Sexton] on [his] right wrist causing a small laceration and bruising." VRP (Nov. 13, 2019) at 192. Sexton speculated that Bercier was trying to "get away from" the officers. *Id.* at 199. We cannot reasonably infer from this evidence alone that Bercier intended to assault Sexton.

Additionally, Sexton never testified that he was placed in apprehension of harm. The State presented no other proof (like utterances made at the time, for example) that Sexton experienced apprehension or fear. Sexton testified only that Bercier accelerated and that he was struck by the car door.

Accordingly, the State failed to provide sufficient evidence to sustain Bercier's conviction for assault as charged and argued to the jury. We reverse Bercier's conviction for third degree assault and remand for the trial court to vacate it.

### III. SENTENCING ERRORS

Bercier also raises several claims relating to errors at the sentencing stage. The State concedes these errors.

A.    Same Criminal Conduct

Bercier argues his counsel was ineffective for failing to argue that his convictions for unlawful possession of a firearm and unlawful possession of a short-barreled firearm were based on the same criminal conduct. The State concedes that these convictions were based on the same criminal conduct and should have been counted as one offense in Bercier's offender score.

When a defendant will be sentenced for multiple current offenses, all other current and prior convictions are used to calculate the offender score. RCW 9.94A.589(1)(a). But if the sentencing court determines that multiple offenses "encompass the same criminal conduct," those offenses will be counted as one crime for the offender score, and the sentences imposed on those offenses will be served concurrently. *Id.* Two crimes constitute the "'[s]ame criminal conduct'" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.*

16

In *State v. Hatt*, the defendant was found guilty of both unlawful possession of a firearm and possession of an unlawful firearm. 11 Wn. App. 2d 113, 127, 452 P.3d 577 (2019). Hatt possessed the same firearm at the same time and place, and the victim of both crimes was "the general public." *Id.* at 142. "Although Hatt's possession of the weapon was unlawful for two separate reasons, his objective criminal intent in committing the two crimes was the same: to possess the firearm." *Id.* at 143. Therefore, Division One held the two crimes were the same criminal conduct and remanded for resentencing after recalculation of Hatt's offender scores. *Id.* at 143-44.

As in *Hatt*, Bercier's convictions for unlawful possession of a firearm and unlawful possession of a short-barreled firearm were based on his possession of a single firearm, the victim of both crimes was the general public, and the criminal intent behind both crimes was to possess the firearm. Accordingly, we accept the State's concession and hold these two crimes were the same criminal conduct, warranting recalculation of Bercier's offender scores and resentencing.

B.      Community Custody Conditions

Next, Bercier argues the trial court erred by imposing "community custody conditions related to sexual conduct and contact with children" because the trial court imposed community custody only on the assault conviction and these conditions are not related to the assault crime. Am. Br. of Appellant at 50. Because we reverse Bercier's assault conviction and remand for the trial court to vacate it, the challenged community custody conditions should be stricken on remand as well.

C.      Prior Conviction for Possession of a Controlled Substance

Finally, Bercier argues his offender score was incorrect because it included a prior conviction for unlawful possession of a controlled substance. The State concedes that Bercier should be resentenced without this conviction included in his offender score.

Bercier was sentenced using an offender score that counted a prior conviction for unlawful possession of a controlled substance. After Bercier was sentenced, the Supreme Court held Washington's strict liability drug possession statute, former RCW 69.50.4013(1) (2017), unconstitutional. *Blake*, 197 Wn.2d at 195. "A prior conviction that is constitutionally invalid on its face may not be included in a defendant's offender score." *State v. Jennings*, 199 Wn.2d 53, 67, 502 P.3d 1255 (2022). We accept the State's concession and direct the sentencing court to exclude Bercier's prior conviction for unlawful possession of a controlled substance from his offender scores on remand.

## CONCLUSION

We affirm Bercier's convictions for third degree rape of a child, attempting to elude a pursuing police vehicle, first degree unlawful possession of a firearm, and unlawful possession of a short-barreled firearm. We reverse Bercier's conviction for third degree assault of a police officer. We remand for the trial court to vacate the assault conviction, strike the associated community custody conditions, and resentence Bercier on all remaining counts with corrected offender scores, considering Bercier's convictions for unlawful possession of a firearm and unlawful possession of a short-barreled firearm as the same criminal conduct.

No. 55185-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Maxa, J.

Veljacic, J.