IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39310-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL DALE WRIGHT, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Michael Dale Wright appeals his conviction for a gross

misdemeanor violation of a no-contact order.  He argues the State's attorney engaged in

numerous instances of misconduct.  We disagree and affirm.

## FACTS

From August to November 2017, Michael Dale Wright and F.S., boyfriend and

girlfriend, lived together in Vancouver.  On separation, a court entered a no-contact order

protecting F.S. from Wright as a result of violence imposed on her.  Wright violated the

order in 2019, and the violation resulted in a criminal conviction.

On March 25, 2021, F.S. received messages via the Facebook Messenger application, which messages she believed Wright sent. The messages included pictures of Wright, contained nicknames he gave her, followed Wright's peculiar texting habits, and mentioned information only Wright knew.

PROCEDURE

On July 1, 2021, the state of Washington charged Michael Dale Wright with a felony violation of a no-contact order under former RCW 26.50.110(5), repealed by LAWS OF 2021 ch. 215 sec. 170. The felony level charge resulted from two purported earlier violations of the order. Two previous convictions raise the crime to a felony. Former RCW 26.50.110(5).

At trial, the State presented testimony from F.S., who identified screenshots of the Facebook messages she received. The defense cross-examined F.S. about her earlier convictions for crimes of dishonesty. Michael Wright argued that, because of F.S.'s dishonesty, she or a friend may have fabricated the messages.

At the close of the State's case, Michael Dale Wright moved for a directed verdict of acquittal on the ground that the State had not proved two prior convictions for violating court orders. Wright highlighted that the State's exhibits included only one conviction for a domestic violence offense. The State withdrew the felony charge and announced it would proceed only on a lesser included misdemeanor charge offense of violation of a no-contact order. The lesser charge did not require two earlier convictions.

2

The judge dismissed the felony charge, but allowed the State to continue the prosecution on a gross misdemeanor violation.

Michael Dale Wright called Michael Yasumoto, an expert in digital forensics, who posited the theory that anyone with access to Wright's Facebook account, be it through physical access to his device or knowledge of his log-in password, could have sent the Facebook messages to F.S. According to Wright, this expert testimony created a reasonable doubt as to whether he violated the no-contact order. On cross-examination, the State asked Yasumoto to identify the evidence that supported his theory and to name who, other than Wright, sent the messages. Yasumoto indicated he lacked any evidence to respond to either question.

In closing argument, the State emphasized that the jury must determine credibility of witnesses. According to the State's attorney, F.S. was credible despite her convictions because they occurred twenty years ago. Even those who committed crimes, according to the State, deserved the protection of the law. The State characterized as unreasonable the theory that F.S. accessed Wright's device and manufactured the messages. According to the State, no evidence or motive supported fabrication. The State underscored that expert witness Michael Yasumoto offered no evidence to support fabrication by F.S. The State told the jury that a possibility that another may have sent the messages did not create a reasonable doubt.

Michael Dale Wright, in closing, hammered that he, as the defendant, bore no burden of proof, possessed no duty to produce evidence, and did not need to testify. His silence could not be used against him. Wright's counsel intoned that the State had failed to conclusively prove who sent the messages. Thus, reasonable doubt required a "not guilty" verdict. Defense counsel emphasized the lack of credibility of F.S.

On rebuttal, the State condemned any guilty verdict based on Michael Dale Wright's silence. The State directed the jury to only consider the evidence presented. The State repeated the unreasonableness of the defense theory of fabrication of messages. The State maintained that any defendant charged with a crime involving electronic devices could advance the mere possibility that someone, even a terrorist, hijacked his Facebook page.

During rebuttal, the State addressed the credibility of Michael Yasumoto, the defense's expert witness, by arguing credibility could not be asserted by someone, but may only be attributed to them by others. The prosecution offered the example of the Parkland police chief, who boasted, after the mass shooting at Marjory Stoneman Douglas High School, to have provided "excellent leadership" when his performance better measured his credibility. The State asked the jury not to discredit F.S. because of "mistakes" from twenty years ago, especially given how often the victims of domestic violence are the sole witnesses.

4

The jury returned a verdict of guilty for the gross misdemeanor charge of violating a no-contact order.

LAW AND ANALYSIS

On appeal, Michael Dale Wright asserts the State's attorney engaged in misconduct when questioning Wright's defense expert and when delivering the closing statement. He also hypothetically raises the specter of being subjected to double jeopardy in the event we reverse his conviction.

Prosecutorial Misconduct

Michael Dale Wright contends the State's attorney engaged in flagrant misconduct by interjecting irrelevant and inflammatory topics, repeatedly reversing the burden of proof, misstating the jury's role, and encouraging the jury to convict on an improper basis. Prosecutorial misconduct can deprive a defendant of his constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984); *State v. Charlton*, 90 Wn.2d 657, 664-65, 585 P.2d 142 (1978). To succeed on such a claim, the accused must show the prosecutor's conduct was both improper and prejudicial, looking at the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011); *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (plurality opinion). To prove prejudice, the defendant must show, by a substantial likelihood, the misconduct affected the jury's verdict. *State v. Thorgerson*, 172 Wn.2d 438, 442-43 (2011). Additionally, when, as here, the defendant did not object to the

5

misconduct at trial, he must further prove the prejudice could not have been remedied by a jury instruction. *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

*Burden of Proof*

We first address Michael Dale Wright's assertion that the prosecution shifted the burden of proof to him. In a criminal case, the prosecution possesses the burden to prove its case beyond a reasonable doubt. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Conversely, a defendant bears no burden of proof, nor a duty to produce evidence. *State v. Montgomery*, 163 Wn.2d 577, 597, 183 P.3d 267 (2008). Should a prosecutor suggest otherwise and shift the burden, the State's attorney commits misconduct. *State v. Gregory*, 158 Wn.2d 759, 859-60, 147 P.3d 1201 (2006). Nevertheless, the State's assertion that the defense's evidence is lacking does not constitute prosecutorial misconduct or shift the burden. *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009). While a prosecutor cannot argue that a defendant's failure to present evidence forms a reason to convict, the State's attorney may emphasize a lack of evidentiary support for a defendant's theory of the case. *State v. Jackson*, 150 Wn. App. 877, 885 (2009).

Michael Wright argues his prosecutor repeatedly reversed the burden of proof and production during the cross-examination of defense expert witness, Michael Yasumoto, and during closing argument. He first complains the prosecutor shifted the burden during

cross-examination when asking three questions that implied the defense bore the burden

of supplying evidence:

> (1) Do you have any evidence that somebody else sent these texts?
> (2) So you're just saying that it's a possibility that somebody could have?
> (3) But who that person is, you don't know?

We disagree that the questioning shifted the burden of proof.

Michael Dale Wright removes the three questions from their context. Michael

Yasumoto, a digital forensic expert, testified on direct examination that the State could

not definitively determine that Wright sent the offending Facebook messages. Yasumoto

opined that anyone with access to the account could have sent the messages. Excluding

questioning about Yasumoto's qualifications as a digitalologist, the direct examination

consisted of five questions.

In response, the State asked Michael Yasumoto to identify the facts behind his

conclusions and any evidence showing someone else sent the messages. As mentioned

above, prosecutors may underscore a lack of evidence supporting an alternative theory.

The State asked the questions to emphasize that Yasumoto hinged his opinions on

speculation, a permissible, if not important, method of cross-examination.

Michael Dale Wright attempts to analogize his prosecuting attorney's statements

to comments uttered in *State v. Fleming*, 83 Wn. App. 209 (1996), wherein a prosecutor

argued that, to find the defendant not guilty, the jury must find the victim lied or was

7

confused about being raped. The *Fleming* prosecutor further asserted that the defense would have presented evidence if the victim lied or fantasized the rape. This court ruled the statements to be misconduct because they shifted the burden and fundamentally invaded the defendants' right to silence. We discern no analogy. Wright's prosecutor never suggested Wright must produce evidence. The prosecuting attorney only attacked as speculative evidence offered by Wright.

Michael Dale Wright's appeal parallels the decision of *State v. Jackson*, 150 Wn. App. 877 (2009). The *Jackson* prosecutor argued a lack of evidence to corroborate the defense's theory. The State's attorney asked the jury to compare the State and defense's evidence to evaluate the credibility of witnesses. This court held that the statements did not shift the burden because the comments did not imply that the defendant needed to provide evidence or that the jury should convict because only one witness testified for the accused. The comments of Wright's prosecuting attorney were one step further removed. The prosecutor only questioned an expert on what evidence the expert witness based his conclusions.

Michael Dale Wright argues the prosecutor again shifted the burden during closing argument by posing:

> But who is this person? Where is this terrible person, [w]e get the expert who tells us it's possible that somebody else could have done it. Couldn't tell us who.

RP at 183.  Later, according to Wright, the prosecutor shifted the burden a third time in rebuttal when uttering:

> [The expert] couldn't tell us who [sent the texts]. . . .  Who would do that?  Where is this straw person coming from?  What's their motive?

RP at 188-89.  The comments did not shift the burden of proof but rather identified a lack of evidentiary support for the defense's theory.

Even if we aggregate the individual questions and statements of the prosecuting attorney, we reach the same result.  The prosecutor did not engage in blatant misconduct similar to the *Fleming* prosecutor, but merely highlighted a lack of evidence for an alternative theory, much like the prosecuting attorney in *Jackson*.

*Role of the Jury*

Michael Dale Wrights argues the prosecutor misstated the role of the jury when commenting that the jury held the burden to determine credibility of witnesses.  The prosecuting attorney intoned:

> You are the sole judges of credibility.  You are the ones that decide who to believe and who not to believe.  And in many ways, that is the jurors' duty.  That's what were asking you to do.  You know, it's not a situation where he said, she said, throw up your hands, we can't decide.  We're asking you to make that call.

RP at 179-80.  Wright argues the reference to "he said, she said" implied the jurors needed to choose whether the victim, F.S., told the truth.  He analogizes to the State's attorney's statements in *State v. Fleming*.

The argument of Michael Dale Wright's prosecuting attorney echoes the proper remarks uttered by the attorney in *State v. Jackson*, not *State v. Fleming*. A prosecutor remains in bounds when telling the jury it is the "sole judge of credibility" and to "compare the state and defense evidence." *See State v. Jackson*, 150 Wn. App at 885-86. Wright's prosecutor did not tell the jury it must find F.S. to be lying to acquit Wright.

*Irrelevant and Inflammatory Topics*

Michael Dale Wright argues the prosecutor committed misconduct by inserting irrelevant and inflammatory topics. He complains that the prosecutor compared him to a terrorist and likened Michael Yasumoto to the Parkland chief of police.

Michael Dale Wright's prosecutor mentioned terrorism to demonstrate unreasonableness when arguing about the use of a phone. The prosecuting attorney remarked:

> You could say that about almost any crime. You could say, you know, calls in terrorist threats that come from somebody's phone, call in, I mean the mere possibility doesn't raise a reasonable doubt.

RP at 189. Michael Dale Wright's prosecutor did not compare him to a terrorist.

We question the relevance of the prosecutor's reference of the Parkland police chief, but the reference was not prejudicial. The prosecutor did not imply the jury should convict to prevent school shootings, but suggested that Michael Yasumoto was not credible simply because he claimed to be credible or qualified.

10

*Improper Basis*

Michael Dale Wright alleges the prosecutor impermissibly encouraged the jury to convict him to protect a category of vulnerable victims. We disagree. Wright sought an acquittal primarily by contending F.S. lacked credibility because of a criminal history. The State's attorney rebutted the argument by legitimately contending that the criminal law protects even those who earlier perpetrated crimes. The prosecutor did not ask the jury to send any message to any group of people or on behalf of any category of individuals.

Michael Dale Wright attempts to analogize his prosecutor's statements to State arguments in *State v. Thierry*, 190 Wn. App. 680, 360 P.3d 940 (2015) and *State v. Smiley*, 195 Wn. App. 185, 379 P.3d 149 (2016). In *State v. Thierry*, a prosecution for child rape and molestation, the prosecutor argued that, if the jury deemed the child victim not credible, the law might as well announce that the word of a child cannot convict and the State should end prosecuting child sex abuse cases. This court held the argument to constitute misconduct because the prosecutor told the jury to convict in order to protect child victims.

Michael Dale Wright's prosecutor did not issue an "if, then" statement. The State's attorney only argued that F.S.'s testimony was credible even with her convictions from twenty years ago.

In *State v. Smiley*, the prosecuting attorney uttered a similar statement: "the State might as well give up prosecuting sex abuse cases if the victim's word was not enough for conviction." *State v. Smiley*, 195 Wn. App. 185, 194 (2016). This court cited *Thierry* when concluding the statement was misconduct. The State implied that the jury would place other children in danger if it acquitted the accused. Michael Dale Wright's prosecutor did not suggest to the jury that those with a criminal record would henceforth be susceptible to crime.

*Ineffective Assistance of Counsel*

Michael Dale Wright contends his trial counsel performed ineffectively when failing to object to the prosecuting attorney's misconduct. Because we discern no misconduct, we need not address this contention.

Double Jeopardy

Michael Dale Wright argues that, assuming this court reverses his conviction and remands for a new trial, the State may only retry him on the gross misdemeanor charge of violation of a no-contact order. Stated differently, the State may not proceed on the initial felony charge. Because we do not remand for a new trial, we need not address this double jeopardy concern.

CONCLUSION

We affirm Michael Dale Wright's conviction for a gross misdemeanor of violating a no-contact order.

12

No. 39310-1-III
*State v. Wright*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____Fearing, J._____
Fearing, C.J.

WE CONCUR:

_____
Pennell, J.

_____
Cooney, J.

13